IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PRINCE McCOY, <br> TDCJ # 00852958, <br><br> Plaintiff, <br><br> VS. <br><br> PATRICIA KUKU, *et al*. <br><br> Defendants. | § § § § § § § § § § § § | CIVIL ACTION NO. 3:17-0275 |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Prince McCoy, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this lawsuit *pro se* complaining of inadequate medical care for his low blood sugar. After the Court denied Defendants' motion to dismiss, Defendants filed a motion for summary judgment (Dkt. 19), to which Plaintiff has responded (Dkt. 21). Defendants also filed a motion to seal their summary judgment motion and three exhibits (Dkt. 18), to which Plaintiff has responded in opposition (Dkt. 22). The motions are ripe for decision. Having considered the pleadings, the briefing, all matters of record, and the applicable law, the Court determines that the motions should be **granted** for the reasons that follow.

I.  **BACKGROUND**

Plaintiff brings this civil rights action against three medical personnel at TDCJ's Darrington Unit: Patricia Kuku L.V.N., Lisa Monse L.V.N., and Terry Speer N.P.[1] He

---

[1]  Some documents in the record refer to Kuku by her former name, Patricia Brown.

alleges that Defendants denied him adequate medical treatment for low blood sugar on several occasions in 2016 and that Kuku "assaulted" his eyes with ammonia. He seeks an unspecified amount of nominal, compensatory, and punitive damages (Dkt. 1, at 4).[2] Defendants have moved for summary judgment and have supplied Plaintiff's medical records and administrative grievance records (Dkt. 19-1–Dkt. 19-26; Dkt. 20). They also submit an affidavit from Steven Bowers, M.D., the legal coordinator for the University of Texas Medical Branch ("UTMB") Correctional Managed Care, presenting his findings and opinions based on his review of Plaintiff's medical records (Dkt. 19-27).

On March 14, 2016, McCoy was treated at the Darrington Unit for unresolved hypoglycemia (Dkt. 19-27, at 4, at 26-30). After clinic staff gave him glucose by mouth, McCoy was transferred to the emergency department at UTMB Angleton Danbury Hospital, where he was treated and released (*id*. at 26-30). The next day, Defendant Speer conducted a follow-up examination at the Darrington Unit clinic and recorded that McCoy's blood sugar was 72 mg/dL, with no symptoms of hypoglycemia (*id*. at 4, 23-25). Dr. Bowers states, upon his review of the records, that McCoy's "condition was overall normal" (*id*. at 4). Speer's treatment plan for McCoy included "[s]nacks between meals" (*id*. at 25).

On April 11, 2016, McCoy complained of low blood sugar and was examined at the Darrington Unit clinic by Defendant Monse (*id*. at 3, 14-16). Monse's records reflect that McCoy was alert, oriented, and denied visual disturbances (*id*.at 16). McCoy's

---

[2] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

blood sugar initially was 59 mg/dL but increased to 70 mg/dL after McCoy ate at the clinic (*id*. at 3, 16). McCoy reported feeling "a lot better" and was released (*id*. at 16 ("released to security . . . . [McCoy] was given an additional peanut butter sandwich to take with him")).

On April 20, 2016, Plaintiff states that he passed out from low blood sugar and that Defendant Kuku responded to his cell. He claims that he was unconscious when Kuku arrived, that she revived him by rubbing ammonia under his nose and then all over his face (Dkt. 1, at 7). After he was taken to the clinic on a stretcher, McCoy alleges that Kuku took his vital signs "roughly" and that another nurse then checked his blood sugar (*id*.; Dkt. 9, at 5). Based on his review of the records, Dr. Bowers states that Kuku did not treat McCoy for low blood sugar on April 20 or any other day (Dkt. 19-27, at 3). Rather, McCoy "initially saw Ms. Kuku on April 20, 2016," but "became verbally aggressive towards her before the exam began, and another nurse subsequently took over" (*id*. (citing *id*. at 11-13)).

McCoy asserts that when Kuku caused ammonia to get in his eyes on April 20, 2016 she subjected him to an "unnecessary assault" that "resulted in McCoy needing treatment for his injured eyes," and that she did not act "in good faith" (Dkt. 21, at 2, 4). As support for his claim, McCoy cites the Court to multiple pages in the medical records that reflect medical attention for his eye complaints (*id*. at 2). However, none of the cited records indicate that McCoy suffered an eye injury on April 20, 2016. Many of the records are unrelated to any alleged eye injury, instead pertaining to routine eye care. *See, e.g.*, Dkt. 19-2, at 6 (Bates 018); Dkt. 19-3, at 11 (Bates 046); Dkt. 19-18 at 10-18

(Bates 305-13); Dkt. 19-19, at 3-4 (Bates 316-17). Although several records note McCoy's complaint of an injury by ammonia, those same records reflect that, upon examination of McCoy's eyes, medical providers noted no redness, irritation, discharge, or other symptoms.[3] The medical providers therefore concluded on more than one occasion that no treatment was indicated for McCoy's eyes. *See, e.g.*, Dkt. 19-2, at 10; Dkt. 19-10, at 1-2; Dkt. 19-11, at 1.[4]

On April 28, 2016, Monse again treated McCoy for his complaints of low blood sugar (Dkt. 19-27, at 3-4, 17-19). Monse consulted with Edgar Hulipas, M.D., during the encounter (*id.* at 19). Medical records reflect that McCoy's blood sugar was initially 45

---

[3] *See* Dkt. 19-2, at 10 (Bates 022) (records from June 1, 2016, reflect McCoy's complaints of "burning eyes" and his statement that, one month earlier, he had been "treated with ammonia and it got in his eyes and has been burning ever since"; records also reflect that upon examination the provider informed McCoy "that eyes [are] not red and no irritation noted"); Dkt. 19-15, at 16 & Dkt. 19-16, at 1 (Bates 259-60) (records from September 2, 2016, reflect McCoy's complaints of burning, itchy eyes; eye examination was "normal" with no discharge or injury noted); Dkt. 19-11, at 16-17 (Bates 194-95) (records from December 13, 2016, reflect McCoy's complaint that he "had ammonia fall in his eyes 5-6 months ago"; eye examination revealed "[n]o redness, swelling or drainage noted to bilat[eral] eyes"); Dkt. 19-10, at 19-20 & Dkt. 19-11, at 1 (Bates 177-79) (records from January 23, 2017, note McCoy's complaints of blurred vision and burning eyes; upon examination, provider concluded "no t[reatment] indicated at this time—[return to clinic] if symptoms worsen"); Dkt. 19-2, at 4 (Bates 016) (records from February 2, 2017, reflect McCoy's complaints that he needed eyedrops because he had "an initial injury of ammonia in his eyes from an ammonia capsule exacerbated a short time later by an illegal use of chemical agents sprayed directly into his face"); Dkt. 19-10, at 1-2 (Bates 159-60) (records from March 28, 2017, reflect McCoy's complaints of burning eyes and blurry vision; upon examination, the provider concluded "no t[reatment] indicated at this time—[return to clinic] if symptoms worsen"). *See also* Dkt. 9, at 7, 10, 14-15 (sick call slips reflect McCoy's eye complaints in 2016 and 2017).

[4] McCoy also submits records from a grievance he filed complaining of inadequate medical treatment for Kuku's alleged actions causing injury to his eyes. The administrative response dated August 19, 2016, states that the documentation showed that McCoy had been "evaluated according to proper protocol" with "no mistreatment or harassment" and that he was "brought to medical without any injuries" (Dkt. 1, at 17-18).

mg/dL, but rose to 69mg/dL after he consumed two peanut butter sandwiches and six cups of water, at which point he was released to security (*id*. at 4, 19).

On May 4, 2016, Monse saw McCoy when he presented for a urine test and daily weight check (*id*. at 4, 20-22 ("scheduled urine dipstick and daily weight due to hypoglycemia and admitted not eating by [McCoy]")). The records reflect that McCoy denied any symptoms of low blood sugar at the appointment (*id*. at 22).

On May 19, 2016, McCoy was treated at the clinic for low blood sugar. Plaintiff states that Monse informed him that Speer had discontinued Plaintiff's "hypo snacks" as of that day (Dkt. 21, at 1-2). He asserts that he had been prescribed a hypo snack after each meal "by a doctor on Wynne Unit" and that his "blood sugar is often low" (*id*. at 2), and characterizes Speer's decision as a "malicous[] and sadistic[]" denial of food (*id*.). McCoy further asserts that there was "no medical justified penol[o]gical reason for Speer[] to discontinue McCoy's hypo snacks on 5-19-1[6] when doing so would only render inadequate medical treatment, deliberate indifference" (*id*.). Despite his allegation that Speer made the decision, he also claims that Monse acted maliciously and sadistically for the purpose of causing him harm, *i.e.*, causing his blood sugar to drop when his hypo snacks were discontinued (Dkt. 1, at 7).

Plaintiff presents records from grievances he filed regarding the discontinued snacks. The grievances reflect officials' statements that, based on the records, his medical needs were being met because the snacks were no longer medically necessary

and because McCoy was receiving a hypercaloric diet.[5] Plaintiff also submitted multiple sick call slips complaining of the discontinued snacks, which reflect that medical staff repeatedly advised him not to skip meals.[6] Based on his review of McCoy's records, Dr. Bowers states that the hypoglycemic snacks were discontinued in May 2016 "because his blood sugar was found to be within normal limits, so the need for snacks between meals was no longer present. As a result, Mr. McCoy was advised to simply eat his regular meals as scheduled" (Dkt. 19-27, at 4 (citing *id*. at 31-33)).

Finally, Plaintiff alleges that he had been prescribed monthly B-12 injections in February 2016 to treat his low blood sugar, but that he did not receive the injections as prescribed (Dkt. 1, at 8). He submits his sick call slips requesting the injections and records from a related grievance, which reflects TDCJ's response in September 2016 that the grievance had merit and the shots should have been administered.[7] He appears to allege that the delay in receiving the injections was attributable to Speer. *See* Dkt. 21, at

---

[5] *See* Dkt. 1, at 13-14 (response to Grievance No. 2016123712, dated August 15, 2016, states that McCoy's complaints regarding denial of his "hypo snack" was unfounded because "[a]ccording to the documentation, the provider conducted a chart review and concluded it was no longer necessary for you to receive snacks"); *id*. at 15-16 (response to Grievance No. 2016145752, dated August 18, 2016, states that snacks were discontinued on May 19, 2016 but that "you currently have an active order for a hyper caloric diet with evening snacks").

[6] *See, e.g.*, Dkt. 9, at 9 (January 8, 2016); *id*. at 7-8 (May 20, 2016); *id*. at 11 (June 14, 2016). On a sick call slip dated May 26, 2016, medical staff advised McCoy, "Avoid starving yourself, eat regularly, last blood work was fine" (Dkt. 19-27, at 33). Plaintiff denies that he was starving himself (Dkt. 1, at 7).

[7] *See* Dkt. 9, at 20-21 (in Step 1 response to Grievance No. 2016181795, dated September 19, 2016, TDCJ officials state that Plaintiff's grievance regarding monthly B-12 injections "ha[d] merit" and that McCoy "should have been administered [his] B-12 shots"); *id*. at 11-12 (Plaintiff's sick call slips from June and July 2016 request the monthly B-12 injections; response dated July 5, 2016, advises Plaintiff "eat regularly, med[ication] current").

5 (Speer "delay[ed] to refill [McCoy's] B-12 injection prescription and the medical staff's refusal to administer it when it was prescribed constitutes. . . deliberate indifference to McCoy's serious medical need").

Based on his experience and his review of Plaintiff's medical records, Dr. Bowers concludes that McCoy received appropriate care:

> Each time Mr. McCoy presented to the clinic for complaints of low blood sugar, his levels were checked and the treatment he received was appropriate. He was not released to security until his blood sugar was at an acceptable level . . . . Based on my education, training, and experience as a physician both in the community and correctional settings, I believe that the medical treatment provided to Mr. McCoy was both appropriate and performed within the standard of care.

(Dkt. 19-27, at 4-5). Plaintiff maintains that Defendants knew he "suffered daily" but denied him appropriate medical care. *See, e.g.*, Dkt. 21, at 6.

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A

claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory.... A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

  B.  **Summary Judgment—Rule 56**

Defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc*., 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to

in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III. ANALYSIS

Plaintiff alleges that Defendants violated his constitutional rights when they denied him adequate treatment for low blood sugar. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because Plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S.

337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").[8]

### A. Motion to Seal

Along with their motion for summary judgment, Defendants filed a request to seal the motion and Exhibits A, B, and D, all of which contain or refer to Plaintiff's confidential medical information. Plaintiff has filed in opposition and argues that sealing the motion "would be denying plaintiff's first amendment right to petition the government, and access to courts, and deny plaintiff's opportunities to seek redress in responding to the defendant's motions in the future" (Dkt. 22, at 1).

Because sealing the motion and exhibits at issue does not affect McCoy's access to courts or other First Amendment rights, and because the documents contain Plaintiff's confidential medical information, Defendants' motion to seal (Dkt. 18) will be granted.

### B. Qualified Immunity

Defendants have invoked qualified immunity. Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in

---

[8] Plaintiff's claims are against Defendants in their individual capacities only. The Court previously dismissed all claims against Defendants in their official capacities (Dkt. 16).

light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome [qualified] immunity." *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (citation and internal quotation marks omitted).

A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Given the circumstances of this case, the Court proceeds to analyze the merits of his constitutional claims.

### C. Medical Care Claims

To prevail on his Eighth Amendment claim, Plaintiff must demonstrate that Defendants exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment standard has both an objective and

subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Second, he must show that the defendant acted, or failed to act, with deliberate indifference to the risk. *Id*. at 345-46. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). "The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter*, 467 F.3d at 463 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)).

Plaintiff alleges generally that Defendants knew that he suffered daily from low blood sugar but denied him adequate medical care. This allegation is refuted by the medical records before the Court which show that McCoy received frequent medical care including, at certain times, daily monitoring of his urine and blood sugar. *See, e.g.*, Dkt. 19-27, at 22 (Plaintiff was seen at clinic on May 4, 2016 for "scheduled urine dipstick and daily weight due to hypoglycemia")). *See Varnardo v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990). The records also demonstrate McCoy's medical providers' repeated notation that McCoy's blood

sugar was low because he had not eaten,[9] and was often alleviated quickly when McCoy ate in the clinic. *See* Dkt. 19-27, at 16, 19.

The Court now addresses Plaintiff's specific claims against each of the three Defendants.

### 1. Kuku

Plaintiff alleges that Kuku was deliberately indifferent to his serious medical needs and that she assaulted him on April 20, 2016. Dr. Bowers states in his affidavit that Kuku never treated McCoy for low blood sugar because, when McCoy was verbally aggressive to Kuku on April 20, 2016, another nurse took over his care (Dkt. 19-27, at 3; *see id.* at 11-13). Plaintiff does not dispute this fact, and agrees that another nurse took over from Kuku that day and conducted the blood sugar testing (Dkt. 1, at 7). Plaintiff makes no other allegations regarding Kuku's treatment for his low blood sugar. He therefore fails to demonstrate a genuine issue of material fact that Kuku was deliberately indifferent to his serious medical needs in connection with hypoglycemia. *See Easter*, 467 F.3d at 463.

To the extent McCoy also intends to bring an excessive force claim against Kuku for "assault" of his eyes with ammonia, his claim fails. When a prisoner claims that a prison official's use of force violated the Eighth Amendment's ban on cruel and unusual punishments, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312

---

[9] *See* Dkt. 19-27, at 22 (records refer to "admitted not eating" by Plaintiff).

(1986)). In this case, by Plaintiff's own version of the facts, ammonia got in his eye when he was unconscious and Kuku was using ammonia to provide emergency medical treatment. *See* Dkt. 21, at 4 (alleging that, when attempting to revive McCoy after he passed out, Kuku "rubb[ed] the ammonia all over his face into his eyes"). Despite his use of the label "assault," he does not allege facts supporting a claim that Kuku actually used physical force against him, nor that she applied any such force maliciously or sadistically. Moreover, even if the Court were to assume that a use of force occurred and that the force was more than *de minimus*,[10] the record refutes McCoy's assertion that he was injured during the encounter with Kuku. Although McCoy cites the Court to multiple pages in his medical records that relate to his eyes, none of the cited records indicate any injury from April 20. The Fifth Circuit has held that even "insignificant injuries" may be cognizable when resulting from an officials' use of unreasonably excessive force. *Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018); *see Hudson*, 503 U.S. at 7 ("[t]he absence of serious injury is… relevant to the Eighth Amendment inquiry, but does not end it"). In this case, however, the records cited by McCoy do not reflect *any* injury to his eye and, in fact, show no medical treatment related to exposure to ammonia.

Given the administrative and medical records contradicting Plaintiff's allegations of force and injury, his conclusory allegation that Kuku "assaulted" him is insufficient to

---

[10] The Eighth Amendment prohibition of excessive force "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal citations and quotation marks omitted).

state a non-frivolous claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B); *Iqbal*, 556 U.S. at 678; *Wilburn v. Shane*, 193 F.3d 517 (5th Cir. 1999) (upholding summary judgment for defendants because "based on the objective factors of [the plaintiff's] medical records, which show no evidence of injuries consistent with his allegations of excessive force, [the plaintiff's] allegations are implausible"). For essentially the same reasons, his conclusory allegations do not defeat the qualified immunity protection invoked by Kuku. *See Orr*, 844 F.3d at 490. All claims against Kuku therefore will be dismissed.

### 2. Monse

Plaintiff alleges that Monse refused to provide him with adequate medical care for his low blood sugar. Dr. Bowers' affidavit states that Monse treated McCoy for low blood sugar on three occasions: April 11, 2016; April 28, 2016; and May 4, 2016 (Dkt. 19-27, at 3-4, 14-22). On April 11, 2016, Monse gave McCoy a sandwich and his blood sugar level increased. McCoy reported feeling "a lot better" when Monse released him (*id*. at 16). On April 28, 2016, Monse gave McCoy two sandwiches and tested his blood sugar several times, consulting with a medical doctor and releasing him from the clinic only after his blood sugar rose to an acceptable level (*id*. at 19). On May 4, 2016, Monse conducted a routine urine dipstick test and daily weight check, and noted that McCoy denied any symptoms (*id*. at 22). Plaintiff does not direct the Court's attention to other occasions on which Monse allegedly violated his rights.[11]

---

[11] Although Plaintiff appears to allege that Monse violated his Eighth Amendment rights in connection with the discontinuation of hypo snacks in May 2016, he explicitly alleges that Speer made the decision to discontinue the snacks, not Monse. *See* Dkt. 1, at 7; Dkt. 21, at 1-2. The

Plaintiff fails to demonstrate a genuine issue of material fact that Monse was deliberately indifferent to his serious medical needs. *See Easter*, 456 F.3d at 463 (Eighth Amendment prohibits "unnecessary and wanton infliction of pain"); *Hinojosa*, 807 F.3d 665 (even a showing of negligence by medical personnel is insufficient to satisfy deliberate indifference standards). To the contrary, the medical records presented by both parties indicate that McCoy received regular, frequent medical care for his symptoms. *See*, *e.g.*, Dkt. 19-27, at 14-22. Plaintiff's conclusory allegations that Monse "denied" him medical care or "refused" to treat him are insufficient to defeat summary judgment and, moreover, are refuted by the medical records. *See Jones*, 678 F.3d at 348. Monse therefore is entitled to qualified immunity and the claims against her will be dismissed. *See Orr*, 844 F.3d at 490.

3. **Speer**

McCoy alleges that Speer denied him adequate medical treatment when he discontinued McCoy's "hypo[glycemia] snacks" on May 19, 2016 (Dkt. 21, at 1-2). He asserts that because his "blood sugar was low on the Darrington Unit repeatedly . . . [t]here was no medical justified penol[o]gical reason for Speer to discontinue McCoy's hypo snacks on 5-19-1[6] when doing so would only render inadequate medical treatment, deliberate indifference" (*id.* at 2). Dr. Bowers' affidavit and the attached medical records demonstrate that medical staff discontinued McCoy's snacks in May

---

issue regarding snacks in May 2016 therefore is addressed below in the context of Plaintiff's claims against Speer.

2016 because McCoy's blood sugar "was found to be within normal limits, so the need for snacks between meals was no longer present" (Dkt. 19-27, at 4, 31-33).

Despite his conclusory allegations of Defendants' deliberate indifference or malicious intent,[12] McCoy does not dispute the evidence that the hypo snacks were not medically necessary on May 19, 2016. He therefore fails to demonstrate a genuine issue of material fact that Speer acted with deliberate indifference to his serious medical need. *See Simbaki*, 767 F.3d at 484; *Jones*, 678 F.3d at 348. To the extent that McCoy complains about a medical decision that he should eat regular meals rather than receive an additional snack, the Supreme Court has clarified that a decision of this nature, which involves a determination about whether a certain form of treatment is indicated, "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *see Uzomba v. Univ. Health Sys., B.C.A.D.C.*, 558 F. App'x 474, 474 (5th Cir. 2014) (plaintiff's "disagreement with a doctor's decision to order blood sugar monitoring instead of placing him on a special diet in connection with his hypoglycemia does not constitute deliberate indifference").[13] Therefore, Speer is entitled to qualified immunity and Plaintiff's claims against him will be dismissed. *See Orr*, 844 F.3d at 490.

---

[12] *See, e.g.*, Dkt. 21, at 4 ("Plaintiff contends it makes sense to infer that the defendants wanted him humiliated, and didn't give a fig for his welfare when they acted promptly to not protect his safety"); *id*. (Monse and Speer's "refusal to treat McCoy and their evil act of taking McCoy off his hypo snacks was done maliciously and sadistically for the very purpose of causing harm"); *id*. at 6 ("The defendants all ignored the dangers posed by exposure by depriving McCoy of adequate medical treatment notwithstanding the fact plaintiff could have died from such injuries or could sustain permanent impairment of disability from the injury").

[13] Additionally, to the extent McCoy argues that Speer violated his Eighth Amendment rights by delaying a prescription refill for McCoy's B-12 injections, *see* Dkt. 21, at 5, his claim fails. A "delay in medical care can only constitute an Eighth Amendment violation if there has

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. Defendants' motion to seal (Dkt. 18) is **GRANTED**.

2. Defendants' motion for summary judgment (Dkt. 19) is **GRANTED**. All of Plaintiff's claims are **DISMISSED with prejudice** under Federal Rule of Civil Procedure 56 and 28 U.S.C. § 1915(e)(2)(b).

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 19th day of July, 2019.

George C. Hanks Jr.
United States District Judge

---

been deliberate indifference that *results in substantial harm.*" *See Rogers*, 709 F.3d at 410 (emphasis in original) (internal citation, quotation marks, and alteration omitted). McCoy does not direct the Court's attention to summary judgment evidence that Speer caused the delay and, moreover, does not demonstrate a genuine issue of material fact that he suffered substantial harm as a result of any delay.